Fuld, J.
Section 343-9.0 (subd. a) of the Administrative Code of the City of New York, enacted in 1961, requires the insertion in city contracts and subcontracts of certain stipulations pertaining to the wages and working conditions of employees of such contractors and subcontractors. Insofar as relevant, this local law recites that
‘ ‘ Every contract for or on behalf of the city for the manufacture, furnishing or purchase of supplies, material or equipment, or for the furnishing of work, labor or services ”,
entered into by public letting, pursuant to section 343 of the City Charter,
‘ ‘ shall contain stipulations by which the contractor agrees * * * [t]hat all persons employed by the contractor and any subcontractor in the manufacture or furnishing of the supplies, materials or equipment, or the furnishing of work, labor or services, used in the performance of the contract will be paid * * * not less than the sum of one dollar and fifty cents an hour. ”
Another provision of section 343-9.0 empowers the city’s Board of Estimate ‘ ‘ to adopt such rules and regulations as may be necessary to carry out the purposes of this section (§ 343-9.0, subd. e). Under an administrative regulation duly promulgated soon after the enactment of the section, the board directed — and there has been compliance with its direction—that the minimum wage stipulations were not to be inserted in city contracts or subcontracts ‘ ‘ for those employees whose minimum wage is required to be fixed by Section 220 of the Labor Law *330 of the State of New York ” (Board of Estimate, Resolution, April '5, 1962, Cal. No. 122), The latter section provides, in part, that “laborers, workmen or mechanics ” employed by a municipality or its contractors on “ public works ” must be paid a minimum wage equal to “ the prevailing rate of wages ” in the same trade or occupation in the locality where the work is being done. (See, e.g., Matter of Gaston v. Taylor, 274 N. Y. 359.)
The Administrative Code provision is challenged in this taxpayer’s action (General Municipal Law, § 51) as illegal and void on the grounds that it is in conflict with existing State legislation and that, in any event, it deals with a subject completely pre-empted by the State.
Before treating these specific arguments, we would but say— what seems quite plain—that the challenged local law is within the scope of the powers granted the city by both Constitution and statute. Thus, the.State Constitution (art. IX, § 12) and the City Home Rule Law (§ 11, subds. 1, 2) expressly confer upon every city the authority to adopt local laws, not inconsistent with State Constitution or statute, “ relating to its property, affairs or government ” and, whether or not such local laws relate to such subjects, to legislate with respect to “ the transaction of its business ” and “ the wages or salaries, the hours of work or labor, and the protection, welfare and safety of persons employed by any contractor or subcontractor performing work, labor or services for it ”. (Emphasis supplied.)[1] These provisions, particularly when read in conjunction with section 20 of the General City Law, empowering cities to ‘ ‘ contract and be contracted with ’ ’, certainly evince a design on the part of the State to provide a city, when contracting for the purchase of supplies or the hiring of labor, with full power to fix the terms and conditions upon which it chooses to deal — with the power, as Special Term aptly put it, “ to regulate * * * its affairs in a manner akin to private corporations or business concerns ”.
*331 In this regard, the section presently under attack does no more than announce the “ terms and conditions ”, with respect to wages, which the city has elected to include in certain of its contracts, Its enactment reflects a determination by the city that the work performed for it, as well as the products to be manufactured and furnished for its use, will be of a higher quality and that the work will not be interrupted or delayed by labor unrest if the persons employed by city contractors and subcontractors in the performance of their agreements are paid no less than the specified minimum rate. Such specifications are as much an incident of the city’s power to contract and be contracted with as is its right to specify the quality of the materials to be used under its contracts and, in establishing them, the city acts not as a lawmaker regulating private parties or businesses but ‘ ‘ in its capacity as proprietor, issuing a mandate to its own agents ” as to the mode of performance of its contracts. (People v. Crane, 214 N. Y. 154, 169, affd. 239 U. S. 195; see Perkins v. Lukens Steel Co., 310 U. S. 113, 127-129; Ellis v. United States, 206 U. S. 246, 255-256; Dougherty v. Folk, Mayor, 70 Ohio App. 304, 310-311; Wagner v, City of Milwaukee, 180 Wis. 640, 644 et seq., dsmd. for want of jurisdiction 266 U. S. 585.)
Although the powers delegated to a city by the provisions of the Constitution and the City Home Rule Law, to which we have referred, are exceedingly broad, they are, of course, conditioned on their exercise not being “ inconsistent ” with any State enactment. And it is the plaintiff’s principal contention that such an inconsistency exists between the challenged provision and section 220 of the Labor Law which declares that persons employed on “ public works ” either directly by a city or by its contractors and subcontractors must be paid a minimum wage equal to “ the "prevailing rate of wages ” (supra, p. 330). By establishing a rigid minimum wage of $1.50 an hour for “ all persons employed ” by city contractors or subcontractors, including those employed on “ public works ”, the plaintiff argues, subdivision a of section 343-9.0 of the Administrative Code comes in conflict with the State’s more flexible “ prevailing rate ” standard and must fall as inconsistent therewith under the principles laid down by this court in Wholesale Laundry Bd. of Trade v. City of New York (12 N Y 2d 998, affg. the reasoning in 17 A D *332 2d 327). Our decision in that ease—holding invalid a local law requiring every employer in New York City to pay to all of his employees a higher minimum wage than that prescribed by a provision of section 652 of the State’s Labor Law—can have no application to the local legislation before us, limited as it is to a particular employer, the city.
Whether the minimum wage provisions of section 343-9.0, if applied to employees working under contract or subcontract with the city on “ public works ”, would be inconsistent with the standard prescribed in section 220 of the Labor Law which, as we have observed, provides for the payment of prevailing rates, is a question with which we need not now concern ourselves, for it is quite clear that the Administrative Code provision has no such application. As previously remarked, the Rules and Regulations of the Board of Estimate, promulgated soon after enactment of the local law, expressly exclude from its scope any and all employees covered by the provisions of the State Labor Law and, in addition, the “ Standard Form of Contract ” used by the city explicitly recites that, “ Except for those employees whose minimum wage is required to be fixed pursuant to Section 220 of the Labor Law ’ ’, all persons employed by the contractor or subcontractor will be paid not less than the specified minimum wage of $1.50 an hour. (Emphasis supplied.) The fact that section 343-9.0 refers, in terms, to “ [e]very contract ” by the city and “ all persons ” employed thereunder is not decisive where it is clear, as it is here, that the city did not intend the section’s provisions to apply to employees covered by existing State law. (See, e.g., Matter of Tuschinsky v. City of New York, 261 App. Div. 802, mot. for Iv. to opp. den. 285 N. Y. 861.) To impute to the city a contrary design — that is, an intention to apply its enactment even to employees on “ public works ”—would not only require us to assume that the city’s legislative officials were unaware of, or chose to ignore, the terms of section 220 but would fly in the face of the clear administrative interpretation given the section by the Board of Estimate, one of the very bodies which participated in its adoption.
In light of considerations such as these, it is not unreasonable to read the words “ [e]very contract” in the Administrative Code section to mean “ every contract not subject to section 220 of the Labor Law”, especially as such a construction not *333 only reflects the section’s practical effect but renders it free from possible constitutional infirmity. Of course, should the city, at some future time, seek to apply its minimum wage requirements to persons coming within the terms of the State law, we would be faced with a different problem than that now before us.
Equally lacking in merit is the plaintiff’s alternative argument that, even if there is no inconsistency between the Administrative Code provision and State legislation, the State’s prevailing wage law (Labor Law, § 220) and its minimum wage act (Labor Law, § 650 et seq.) indicate a purpose on the part of the State to occupy or pre-empt “ the entire field ” in which the Administrative Code provision was designed to operate and thereby preclude the city from enacting a minimum wage provision of any kind.
It cannot be seriously contended that section 652, which neither deals with the rates of pay of employees of city contractors nor in any way curtails a city’s right to set its own contractual wage standards, evidences any intent on the part of the State to prohibit a city from passing legislation such as that before us. Nor can such a design be inferred from the enactment of section 220. In the first place, that provision merely deals with one type of city contract and undertakes to set a minimum wage for but a single category of employees, namely, those working on State or city public works projects. In the second place, and of prime significance, the constitutional provision (art. IX, § 12) granting every city the power to fix “ the wages or salaries ” of persons employed by those with whom it contracts was added to the Constitution in 1923 (then art. XII, § 3) at Avhich time section 220 and the constitutional grant of wage-fixing power to the State Legislature (art. IX, § 9) had been in effect for some 18 years. Surely, both the successive State Legislatures and the People, who subsequently adopted the municipal wage-fixing constitutional amendment, must be presumed to have been aware of the existence of section 220 and of the power previously granted to the State Legislature to fix the wages of employees of city contractors and subcontractors. If section 220 had indeed pre-empted the entire area of wages payable under city contracts and had, by that token, rendered a city powerless to establish what it considers decent wage minima for employees *334 working under city contracts for other than public works, then, the subsequent constitutional grant of concurrent power to cities to enact consistent local laws with respect to the fixing of wages of employees' of city contractors would have been a futile gesture. The 1923 grant of concurrent power to cities must be regarded as a constitutional recognition that section 220 does leave room for consistent local legislation to complement its provisions.
We have considered the other arguments advanced by the plaintiff and find them without substance..
The order appealed from should he affirmed, with costs.
Chief Judge Desmond and Judges Dye, Burke, Scileppi and Bergan concur with Judge Fuld ; Judge Van Voorhis dissents and votes to reverse upon the dissenting opinion at the Appellate Division.
Order affirmed.

. Article IX of the Constitution was revised, effective January 1, 1964, and the City Home Rule Law was repealed and its provisions re-enacted as part of the Municipal Home Rule Law, effective January 1, 1964. Since the local la-w under consideration was enacted prior to that date, references herein are to the Constitution and City Home Rule Law provisions in effect at that time. (See N. Y. Const,, art. IX, § 2; Municipal Home Rule Law, § 10.)