OPINION OF THE COURT
Eileen Bransten, J.
*290 In this CPLR article 78 proceeding, petitioner Richard Tavarez seeks a judgment compelling respondent Robert Dennison, Chairman of the New York State Division of Parole, to terminate his sentence pursuant to Executive Law § 259-j (3-a). The Division of Parole opposes the petition.
Background
On April 28, 1998, Mr. Tavarez was sentenced to 4V2 years to life for criminal possession of a controlled substance in the second degree and to a concurrent term of IV2 to 3 years for criminal possession of a weapon (a handgun) in the third degree. (Affirmation in support of petition 11 4.) He was remanded to Washington Correctional Facility (Washington CF) to serve his term. (Affirmation in opposition, exhibit B, at 1.)
Fewer than three years later, on November 11, 2000, Mr. Tavarez was granted early conditional parole based solely on his agreement that he would be deported and would not return to the United States for the rest of his life (which was the maximum expiration date of his sentence) absent express permission from the United States Government. (Affirmation in opposition, exhibit D.) Mr. Tavarez’s certificate of conditional parole for deportation only (which he signed) sets forth:
“I understand that I am being transferred to the custody of the Immigration and Naturalization Service for the purpose of deportation only and that only the United States government can give me permission to return to the US after I have been deported. In addition, I will not return to the United States prior to my Maximum Expiration Date without prior contact with the New York State Board of Parole. I will forward notice of my proposed return to [the Division of Parole] . . . and I will not return to the US until I receive instructions from the Division of Parole telling me how and when to report to a Parole Officer.” (Affirmation in opposition, exhibit D.)
On January 15, 2001, Washington CF released Mr. Tavarez to the control of the United States Immigration and Naturalization Service, which deported him to the Dominican Republic on February 2, 2001. (Affirmation in support of petition 11 5.)
In September 2005, after he was arrested by the New York City Police Department and charged with possession of a controlled substance and possession of a forged instrument, the Division of Parole discovered that Mr. Tavarez had violated his *291 parole and was illegally in the United States. (Affirmation in support of petition H 6; affirmation in opposition 1Í 7.) Mr. Tavarez ultimately pleaded guilty to possession of a forged instrument and was later sentenced to IV2 to 3 years’ imprisonment. (Affirmation in opposition, exhibit G, at 3.) He also pleaded guilty to a federal charge of illegal reentry. (Id.)
On September 9, 2005, the Division of Parole served Mr. Tavarez with a notice of violation. (Affirmation in opposition 1Í 8.) Mr. Tavarez waived a preliminary parole hearing, electing instead to proceed directly to his final parole revocation hearing. (Affirmation in opposition 1i 9.)
On December 1, 2005, Mr. Tavarez requested termination of his sentence pursuant to Executive Law § 259-j (3-a), which mandates termination of certain drug-related sentences after three years of unrevoked parole. By letter dated December 9, 2005, the Division of Parole denied the request, explaining that, pursuant to Penal Law § 70.30 (1) (a), “Mr. Tavarez has not satisfied the State sentence associated with his conviction for Criminal Possession of a Weapon in the 3rd Degree and has never obtained a discharge from that sentence.” (Affirmation in support of petition, exhibit A, at 2.) Because, according to the Division of Parole, Mr. Tavarez was still on parole for a non-drug-related offense, the agency concluded that Executive Law § 259-j (3-a) was inapplicable. (Id.)
The Division of Parole also emphasized that Mr. Tavarez was ineligible for termination of his sentence because he “was not released to parole supervision, but instead was granted conditional parole for deportation only.” (Affirmation in support of petition, exhibit A, at 2.)
A final parole revocation hearing was held on March 2, 2006, at which time Mr. Tavarez pleaded guilty to violating the terms of his conditional parole. (Affirmation in opposition H 10 n 9.)
Mr. Tavarez now moves for a judgment directing the Division of Parole to terminate his 1998 sentence. Mr. Tavarez claims that his nondrug (weapon possession) sentence ran concurrently with his drug sentence and expired after three years. (Petitioner’s mem of law at 7.) Thus, he asserts, he is only on parole for the drug offense and Executive Law § 259-j (3-a) requires termination of his sentence because his parole has remained unrevoked for more than three years. (Petitioner’s mem of law at 2-3; affirmation in support of petition 11 8.)
The Division of Parole opposes the petition, arguing that Mr. Tavarez never reached the maximum expiration date of his *292 firearm sentence since Penal Law § 70.30 (1) (a) sets forth that the maximum terms of indeterminate sentences “shall merge in and be satisfied by discharge of the term which has the longest unexpired time to run.” (Affirmation in opposition 1i 17.) Thus, Mr. Tavarez was not on parole solely for a drug offense and Executive Law § 259-j (3-a) is inapplicable.
The Division of Parole also contends that Mr. Tavarez should not benefit from Executive Law § 259-j (3-a) because he was not granted supervised parole release, but, rather, was released for the sole purpose of being deported for the rest of his life or until he received permission to reenter this country (at which time he would have to report to a parole officer). (Affirmation in opposition 11 20; see also, exhibit D.) It urges that Mr. Tavarez’s parole was different from that contemplated by Executive Law § 259-j (3-a) because ordinarily a parolee is supervised and subject to certain rules and requirements, compliance with which is monitored. Mr. Tavarez, however, was released without any supervision and subject to a single condition — remaining out of this country — with which he did not comply. (Id.) Finally, the Division of Parole avers that Executive Law § 259-j (3-a) was enacted to benefit nonviolent criminals, not Mr. Tavarez, who was convicted of possession of a weapon at the same time as his drug offense. (Id. )
Analysis
Relief in the form of mandamus to compel, which directs a body or officer to perform a duty enjoined by law, is “extraordinary . . . [and], by definition, . . . available only in limited circumstances.” (Matter of Harper v Angiolillo, 89 NY2d 761, 765 [1997]; see also, Matter of Legal Aid Socy. of Sullivan County v Scheinman, 53 NY2d 12, 16 [1981].) Mandamus may only be granted once a petitioner “establishes a ‘clear legal right’ to the relief requested.” (Matter of Council of City of N.Y. v Bloomberg, 6 NY3d 380, 388 [2006].) Thus, the statutory directive, the enforcement of which is sought, must be “mandatory, not precatory” (Klostermann v Cuomo, 61 NY2d 525, 531 [1984]), and, in “the absence of a clear and unequivocal expression of intent from the Legislature” demonstrating definitive entitlement to the relief sought, mandamus is unavailable. (Harper v Angiolillo, 89 NY2d at 767-768 [“Given the absence of a clear and unequivocal expression of intent from the Legislature . . . , petitioner here has failed to demonstrate a clear legal right to the [relief] he seeks”].)
*293 Mr. Tavarez contends that the Division of Parole violated Executive Law § 259-j (3-a) by refusing to terminate his sentence.
The Rockefeller Drug Law Reform Act was passed to “reduce prison terms for non-violent drug offenders, provide retroactive sentencing relief and make related drug law sentencing improvements.” (Assembly Mem in Support, Bill Jacket, L 2004, ch 738, at 3.)
Executive Law § 259-j (3-a), enacted as part of the Drug Law Reform Act, provides that the “division of parole must grant termination of sentence after three years of unrevoked parole to a person serving an indeterminate sentence for a class A felony offense defined in article two hundred twenty of the penal law [controlled substance offenses].” This provision was intended to “allow parole supervision resources to be front-loaded to the beginning of an offender’s supervision period, where they are most effective.” (Assembly Mem in Support, Bill Jacket, L 2004, ch 738, at 6 [emphasis added].)
This court is not convinced that Executive Law § 259-j (3-a) applies in the context of conditional parole for deportation only (as opposed to supervised parole). Section 259-j (3-a) only requires “termination of sentence after three years of unrevoked parole.” (Emphasis added.) When a parolee is deported out of the country and is unsupervised, revocation of parole is not contemplated (unless, of course, as in this case, the parolee is found in the United States). There are no conditions on the parolee’s freedom outside the United States and, unlike supervised parole, there is no monitoring to ensure that the parolee is law-abiding.
A contrary conclusion would have the absurd effect of converting Mr. Tavarez’s agreement to remain out of the country for the rest of his life (absent permission of the United States Government and notice to the Division of Parole) into an agreement to leave the country for three years while unsupervised and then potentially return to the United States without any restrictions or consequences. This certainly could not have been the Legislature’s intent in passing Executive Law § 259-j (3-a).
Indeed, the motivation underlying the enactment of section 259-j (3-a) was to allow “supervision resources to be front-loaded to the beginning” of the “supervision period” (Assembly Mem in Support, Bill Jacket, L 2004, ch 738, at 6 [emphasis added]), demonstrating that the Legislature envisioned that an offender benefitting from the provision would have been subject to the Division of Parole’s supervision for three years before the sentence could be terminated.
*294 Because Mr. Tavarez has not demonstrated a clear right to relief — he has not established that Executive Law § 259-j (3-a) requires termination of the sentence of an unsupervised parolee who has been deported out of this country — there is no basis for ordering termination of his sentence. His petition is denied and the proceeding is dismissed.*
Accordingly, it is ordered and adjudged that the petition is denied and the proceeding is dismissed.

 Since Executive Law § 259-j (3-a) does not apply when a parolee is granted conditional parole for deportation only, this court need not — and does not— address the validity of the Division of Parole’s argument that the provision is inapplicable because, based on Penal Law § 70.30 (1) (a), Mr. Tavarez was on parole indefinitely not only for his drug offense, but for his weapon possession offense as well.