MERRILL LYNCH REALTY ASSOCIATES, INC., et al., Respondents, v CARLL S. BURR III et al., Appellants.

In 1980, the plaintiff Merrill Lynch Realty Carll Burr, Inc. (hereinafter MLRCB), then known as MLRB Corporation, a wholly owned subsidiary of the plaintiff Merrill Lynch Realty Associates, Inc. (hereinafter MLRA), purchased the operating

assets, corporate name, and goodwill of Burr Real Estate, Inc., a real estate brokerage business which had been conducted in Nassau, Suffolk and Queens Counties for a number of years, from the defendant Carll S. Burr III and his parents, the defendants Carll S. Burr, Jr., and Barbara Burr, and its other shareholders. The purchase was effected by way of an acquisition agreement pursuant to which, *inter alia,* the shareholders of Burr Real Estate, Inc., including the Burrs, agreed to refrain from using the name "Burr", in accordance with the following provision: "(e) <u>Use of Names.</u> The Stockholders agree that the Purchaser and its successors and assigns may use the name 'Burr' alone or together with any other name. The Stockholders will not permit any corporation (including the Company), partnership, entity or other person (other than the Purchaser) to use the name Burr alone or together with any other name and will promptly cause any such corporation (including the Company), partnership, entity or other person so using the name Burr to cease doing so; provided, however, that The Burr Agency, Inc., Burr Travel Bureau and The Landry Burr Corporation may continue to use their respective names so long as such entities do not engage in the real estate brokerage business".

Each of the Burrs also entered into a written employment agreement with MLRCB, each of which included a covenant not to compete and a noninterference covenant. Carll S. Burr III assumed the job of president of MLRCB, which placed him in charge of all its operations. The covenants in Mr. Burr's employment agreement expired in 1985.

On or about June 20, 1982, Carll S. Burr III resigned from his position at MLRCB. Approximately 16 months later, he entered into employment as an executive with Coldwell Banker, a competing real estate brokerage company operating on Long Island. When Mr. Burr's name appeared in a Coldwell Banker advertisement for sales agents in early 1984, MLRCB commenced an action against him seeking relief for certain alleged breaches of the restrictive covenants contained in his 1980 employment contract. The action was settled by means of a stipulation and order, entered August 13, 1984, which provided, in relevant part: "3. Defendant Burr will not use, nor will he permit Coldwell Banker or any other corporation, partnership, firm, person or other entity, in which he has an ownership interest or by which he is employed, to use the names 'Burr' or 'Carll Burr', either alone or together with any

other name in connection with advertising, press releases (which shall not be deemed to include reports by the media of interviews initiated by the media), solicitations, or other information disseminated to or directed to the general public, in connection with a real estate or other business located anywhere in Queens, Nassau or Suffolk counties, New York". Thereafter, Mr. Burr continued in the employ of Coldwell Banker until November 1984.

In or about September 1985 MLRCB dropped the Carll Burr name by filing an amended certificate of assumed name with the New York State Secretary of State, thereby adopting the new name "Merrill Lynch Realty". According to the defendants, the plaintiffs subsequently amended the licenses of all of its hundreds of sales agents, replaced at least 30 building signs and hundreds of lawn signs, as well as had new business cards and stationery printed. The defendants also allege that "in at least one other jurisdiction, officers of MLRA have testified that it is Merrill Lynch Realty's policy to abandon local names as soon as feasible because their continued use inhibits creation of a national image. Thus, company policy was to drop local names when the Merrill Lynch name had achieved its own real estate identity".

Sometime in late 1985 or early 1986, Carll Burr III was rehired by MLRCB, at which time he resumed his prior position as president, vice-president and general manager of MLRCB's business. No written agreement was entered into at this time with respect to limitations on Burr. By letter dated September 25, 1986, Carll Burr III informed the company that he intended to terminate his employment as of October 3, 1986.

On September 28, 1986, an article appeared in the New York Times in which it was announced that all MLRA real estate brokerage operations were to be sold. The following day, a memorandum was issued by the president of Merrill Lynch Realty, Tri-State, officially announcing to all Merrill Lynch Realty managers, sales associates, and staff, that all the Merrill Lynch real estate related services were being put up for sale.

Following the announcement that MLRA was to be sold, Mr. Burr expressed his interest in buying the Long Island operation. However, he allegedly was told that MLRA sought to sell its entire brokerage operations as a package to a single purchaser. At a meeting held on October 3, 1986, and attended by among others, Mr. Aubrey L. Pettit, senior vice-president and general counsel to MLRA, as well as Carll Burr

III and three Merrill Lynch Realty managers, Jack Pulling, Bob Olita, and Bart Cafarrella, a new agreement was entered into pursuant to which Mr. Burr agreed to remain as manager of the "Long Island Division" of the "Tri-State Division" of MLRA for the period of October 1, 1986 through December 31, 1986. According to the defendants, Mr. Burr entered into this 90-day employment agreement in consideration of an alleged oral representation made by Mr. Pettit that, upon expiration of the 90 days, Mr. Burr would be free to use the "Burr" name in any real estate endeavor he might choose. The plaintiffs deny that any such oral representation was ever made.

Approximately one month after the 90-day agreement expired, "Rangeley Lakes Corporation", doing business as "Carll Burr Realty", a company which had been formed in December 1986, entered the real estate brokerage business on Long Island. The defendants Carll Burr III, John Olita, and Bart Cafarrella each own one third of the stock in this company, which, as of March 1987 operated four offices and had 26 sales agents, 17 of whom formerly worked for MLRCB.

In or about February 1987 the plaintiffs instituted this lawsuit seeking, *inter alia*, (1) specific performance of the August 13, 1984 stipulation, (2) compensatory and punitive damages, and, (3) permanent injunctive relief. Thereafter, the plaintiffs sought and were granted a preliminary injunction enjoining the defendants from using the "Burr" and "Carll Burr" names. The defendants subsequently moved to renew and/or reargue, on the basis of alleged new facts, i.e., the plaintiffs had "consummated the 'sale' of their entire real estate interest", which motion was denied.

It is well settled that in order to prevail on a motion for a preliminary injunction, the movant has the burden of demonstrating (1) a likelihood of ultimate success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) that a balancing of equities favors the movant's position *(see, Grant Co. v Srogi,* 52 NY2d 496; *Family Affair Haircutters v Detling,* 110 AD2d 745; *Gambar Enters. v Kelly Servs.,* 69 AD2d 297).

Viewed within this framework, we find that it was an improvident exercise of discretion to grant the instant plaintiffs' motion for a preliminary injunction.

With respect to the first requirement (i.e., likelihood of success), it has been stated that a party is not entitled to a preliminary injunction unless the right is plain from the undisputed facts. If the right depends upon an issue which can

only be decided upon a trial, the injunction should not be granted. Where the facts, as in the case at bar, are in sharp dispute, a temporary injunction should not be granted *(Family Affair Haircutters v Detling, supra)*. In the instant case, while we do not dispute the finding that Mr. Burr contractually obligated himself to refrain from using the "Burr" name in connection with any real estate business other than that of the plaintiffs in either Nassau, Suffolk, or Queens Counties, we cannot ignore the defendants' allegations of oral representations purportedly made by the plaintiffs, which, if proven, would tend to militate against enforcement of the aforesaid written contractual provisions. In this regard, we note that, while it is true that General Obligations Law § 15-301 renders unenforceable any oral agreement to modify or cancel terms of a contract where that contract expressly provides that any modification or cancellation must be in writing *(see, Rose v Spa Realty Assocs.,* 42 NY2d 338; *Cliffs Mgt. Corp. v Great E. Mgt. Corp.,* 85 AD2d 584, *appeal dismissed* 56 NY2d 643), it is likewise true that the provisions of General Obligations Law § 15-301 do not serve to bar enforcement of a subsequent oral agreement to modify or cancel a contract where, as here, the contract does not contain an express prohibition against oral modification *(Local 50, Bakery, Confectionery & Tobacco Workers Union v American Bakeries Co.,* 73 AD2d 862; *Miles v Houghtaling,* 32 AD2d 714; Fisch, New York Evidence § 45, at 26 [2d ed]).

Additionally, we find that there exist other sharply disputed issues of fact, e.g., the question of the plaintiffs' alleged abandonment of the "Burr" name. In the face of so many conflicting allegations, we cannot sanction the granting of the extraordinary remedy of a preliminary injunction.

Moreover, any claim that the plaintiffs will suffer irreparable injury without a preliminary injunction, or that a balancing of the equities favors the issuance of preliminary injunctive relief, must be rejected in view of the plaintiffs' apparent sale of their real estate business. On this basis, it does not appear that an injunction would confer any substantial benefit upon the plaintiffs, and therefore we cannot justify inflicting such serious hardship upon the appellants at this juncture *(see, Nielsen v Corbo,* 35 AD2d 580). Mangano, J. P., Thompson, Sullivan and Harwood, JJ., concur.