JACK RAPPS et al., Appellants, v CITY OF NEW YORK, Respondent. [864 NYS2d 130]—

In an action, inter alia, to recover damages for the wrongful demolition of a building, the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Richmond County (Aliotta, J.), dated June 1, 2007, as granted that branch of the defendant's motion which was for summary judgment dismissing the complaint.

Ordered that the order is reversed insofar as appealed from, with costs, and that branch of the defendant's motion which was for summary judgment dismissing the complaint is denied.

In the exercise of its police powers "[a] municipality may demolish a building without providing notice and an opportunity to be heard if there are exigent circumstances which require immediate demolition of the building to protect the public from imminent danger" (*Calamusa v Town of Brookhaven*, 272 AD2d 426, 427 [2000]; *see Starik v City of New York*, 68 AD2d 936 [1979]). Although there was some evidence of imminent internal collapse and the inability to prevent squatters from reentering the plaintiffs' building, the defendant failed to make a prima facie showing of entitlement to judgment as a matter of law by proffering evidence that immediate demolition of the building was required by an emergency situation, i.e., the building was in imminent danger of collapse and posed an immediate peril to

the public health and safety (*see Merino v City of Middletown*, 272 AD2d 454, 454-455 [2000]; *see also Marigin v City of New York*, 215 AD2d 539, 539-540 [1995]; *cf. Home Doc Corp. v City of New York*, 297 AD2d 277, 278 [2002]).

In support of its motion, the defendant submitted the deposition testimony of two of its officials, Ron Silver, Supervisor of the Construction Division for the Borough of Richmond, Department of Buildings, and Vito Mustaciuolo, Assistant Commissioner for the Division of Code Enforcement, New York City Department of Housing Preservation and Development. Significantly, neither of those persons testified that they thought the building was in imminent danger of collapse. In fact, when Silver was asked why he made the decision to demolish the building, he indicated that it was winter and cold and he was afraid that after it was vacated and boarded up, vagrants and homeless people would somehow find their way in.

Additionally, Silver testified that his office was called to the scene by the New York City Fire Department (hereinafter the Fire Department). When he arrived, he was met by both Fire Department personnel and Office of Emergency Management (hereinafter OEM) personnel. According to him, both indicated only that the building's interior structure was defective and that the building should be vacated. There was no indication that anyone from either of those agencies recommended immediate demolition.

This was insufficient to show, as a matter of law, that there was imminent danger such that it was reasonable for the City to exercise its emergency police powers and demolish the building without resorting to the expedited proceedings provided for by the Administrative Code of the City of New York (*see* Administrative Code of City of NY §§ 26-235—26-243; *Merino v City of Middletown*, 272 AD2d 454, 454-455 [2000]; *see also Starik v City of New York*, 68 AD2d 936 [1979]). Accordingly, as the City failed to meet its burden of showing its entitlement to judgment as a matter of law (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]), the motion should have been denied. In light of this determination, we need not examine the sufficiency of the plaintiffs' opposition papers (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Mooney v Petro, Inc.*, 51 AD3d 746 [2008]). Lifson, J.P., Florio, Eng and Belen, JJ., concur.