*685 OPINION OF THE COURT
Jeffrey Arlen Spinner, J.
On September 7, 2007 plaintiff commenced this action claiming foreclosure of a mortgage by filing its notice of pendency and summons and complaint with the Clerk of Suffolk County. The mortgage at issue was originally given in favor of New Century Mortgage Corporation, plaintiff’s assignor. Said mortgage was given to secure a note and constitutes a first lien upon premises known as 3 Danville Court, Greenlawn, Town of Huntington, New York. On November 30, 2007, plaintiff filed an application with this court seeking the appointment of a referee pursuant to RPAPL 1321 but withdrew that application on December 5, 2007. Subsequently, and on September 18, 2009, plaintiff filed a second application for the same relief which was granted by order of this court dated November 4, 2009.
On January 14, 2010, upon the written request of defendant Steven Tyson, this court convened a conference in order to address certain serious issues which had arisen with respect to the property under foreclosure. Defendant took the time to appear in person while plaintiff dispatched a per diem attorney who had absolutely no knowledge of the matter inasmuch as she was not regular counsel, was not provided with any information and hence no meaningful progress could occur. The court was thereupon compelled to continue the conference to February 24, 2010, at which time the defendant again appeared in person, on this occasion, with counsel of record for the plaintiff, appearing as instructed by the court.
The issue that brings these parties before the court at this time concerns the entry, without permission, into defendant’s dwelling house, by agents dispatched expressly for that purpose by plaintiff. Plaintiff vociferously asserts that it has the absolute and unfettered right, under the express terms of the mortgage, to enter the premises at any time, for purposes of inspection and protection of its security interest and that it is free to do so without having to obtain defendant’s consent for the same. Defendant counters that plaintiff has wrongfully and without justification entered the dwelling on at least two separate occasions, causing damage to the premises and resulting in the loss of various items of personalty.
The following facts are not in dispute. Defendant and his wife are the owners, in fee simple absolute, of the premises known as 3 Danville Court, Greenlawn, New York, which are subject to a first lien in favor of plaintiff. Plaintiff has commenced an ac *686 tion to foreclose that lien, but there has been no devolution of title. Defendant’s personal financial situation is such that he can no longer maintain the high cost of utility service, resulting in the voluntary discontinuance of same. Defendant has previously winterized the plumbing and heating systems in the dwelling, has secured the building, maintains the exterior of the premises and retains virtually all of his personalty in the home including furniture, clothing and foodstuffs. Defendant has, previous to any entry on the premises herein, notified plaintiff of the discontinuance of utility service and the winterization and securing of the dwelling. Defendant, although he is now residing elsewhere, has not abandoned the property, has not evinced any intent to abandon it and he visits the premises at least once weekly and sometimes with greater frequency. In addition, defendant has arranged with a neighbor to keep a watchful eye on the property in his absence.
It is also undisputed that without any notice to defendant, on or about November 13, 2009, plaintiff dispatched an agent to the premises who thereupon changed the locks, thus barring defendant from access to his property. When defendant contacted plaintiff relative to his wrongful ouster from the dwelling and demanded access, plaintiff’s representative denied any knowledge of the entry and directed him to contact Fein Such & Crane L.L.E, their counsel of record. Upon contacting them, defendant was advised by someone named Matt that the entry into the home was standard procedure but a new key to the premises would be provided to him by plaintiff, and defendant expressly directed that they remain away from the property. In spite of defendant’s requests plaintiff caused the property to be entered yet again in late December or early January, at which time defendant, having been telephoned by his neighbor, actually confronted these persons and urged them to immediately leave the premises. Defendant was able to discover that these persons obtained access by use of a key identical to the one that was previously provided by plaintiff to defendant. Defendant then secured the premises only to return later that day to find his garage open and the loss of various items of personal property, including an eight kilowatt portable generator, a 14-foot aluminum sectional extension ladder, an aluminum stepladder, a convertible hand truck, an AquaBot pool cleaning device and other items, valued, according to documentation supplied by defendant, at $4,892. Defendant thereafter contacted the Suffolk County Police Department and made a full report, which was docketed under central complaint No. 10-85647.
*687 It is at this point that the accounts begin to diverge. Defendant offered sworn testimony as follows: he arrived at the premises on November 17, 2009 to discover that he had been “locked out,” so to speak; upon communicating with plaintiff, he was redirected to their attorney who informed him that the property was “inspected and secured” due to its abandoned state; they dispatched a new key to him whereupon he discovered that his door lock cylinders had been drilled out; defendant advised plaintiff that he was in possession of the premises, that he had not abandoned the dwelling, that it was replete with his furniture and personal effects and he further instructed them to remain away from the property and to refrain from any entry into the dwelling; according to defendant, plaintiffs representative apologized and stated that they would not enter the premises.
On February 24, 2010, plaintiff produced a witness, one John Denza, who testified under oath, as follows: at the express direction of plaintiff, his company (a private property inspection and preservation firm) caused the mortgaged premises to be inspected on November 3, 2009, allegedly found the front door to be wide open and the premises completely unsecured and so notified plaintiff; plaintiff faxed his company a work order on November 6, 2009 directing that the locks be changed and the dwelling be secured and winterized and further, that on November 13, 2009 his company caused the locks to be changed; he flatly denied that the locks had been drilled or otherwise forcibly removed, instead asserting that the front door to the premises was ajar and the existing lock cylinders were simply unscrewed and set aside. It was only after a rather probing examination by the court that Mr. Denza conceded that he had no actual knowledge as to the matters about which he testified since he never visited the premises, relying instead upon another individual to whom he had delegated all responsibility. Placing things into simpler terms, the totality of his testimony consisted of nothing more than self-serving statements constituting inadmissible hearsay not subject to any exception (Latimer v Burrows, 163 NY 7 [1900]; People v Huertas, 75 NY2d 487 [1990]). No testimony or evidence from a party with actual knowledge was proffered by plaintiff.
The law is clear that it is both the province and the obligation of the trial court to assess and determine all matters of credibility (Matter of Liccione v John H., 65 NY2d 826 [1985]; Morgan v McCaffrey, 14 AD3d 670 [2d Dept 2005]). It is for the *688 trial court to apply and resolve issues of witness credibility. Here, plaintiff has produced a witness who has absolutely no firsthand knowledge of the controversy, hence his testimony is devoid of all probative value and cannot be the subject of any serious consideration. On the other hand, upon assessment of defendant’s demeanor and comportment, the court is convinced that he is telling the truth and he is worthy of belief.
At the February 24, 2010 conference, plaintiffs counsel doggedly insisted that plaintiff was wholly justified in taking the actions complained of by defendant (entry upon the property), asserting that it had done so in accordance with the rights conferred upon it under the terms of the mortgage and therefore plaintiff bore no liability whatsoever to defendant. At no time was there any denial that plaintiff had caused defendant’s property to be entered on more than one occasion, counsel simply asserting that plaintiff had the right to enter into and protect the property as it saw fit.
Though not specifically enumerated by counsel, the court presumes that plaintiff derives its claimed rights from paragraph 7 (b) of the mortgage herein, which states, in pertinent part, that
“[l]ender, and others authorized by Lender may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.”
Though this contractual provision clearly requires some kind of notice to defendant, there is no indication that any notice at all was provided to defendant. Indeed, plaintiff does not even advance any claim that it has complied with this section but instead baldly asserts, through counsel and not through any person with actual knowledge, that it has what appears to be an unfettered right to enter the premises at any time.
Presumably, counsel for plaintiff further relies upon the express provisions of paragraph 9 of the mortgage which states, in pertinent part, that
“[i]f ... I have abandoned the Property, then Lender may do and pay for whatever is reasonable and appropriate to protect Lender’s interest in the Property . . . Lender’s actions may include but are *689 not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; . . . Lender can also enter the Property to make repairs, change locks . . . and take any other action to secure the Property.”
This section presupposes that defendant has abandoned the property. It logically follows then that abandonment would be a strict prerequisite to plaintiffs right of entry upon and within the premises. Here, defendant’s testimony plainly reveals that he has not abandoned the property in any manner whatsoever and therefore the required condition precedent to plaintiffs entry does not exist.
A fair reading of the contractual provisions set forth supra makes it abundantly clear that any and all actions taken by plaintiff must be reasonable and, where entry to do improvements on the property is contemplated, then the same must be accomplished only upon notice to the other party. It is apparent that plaintiff has breached its own contract by its failure to give notice and, further, that its actions are not reasonable under the circumstances presented. This is especially true herein since the condition precedent to plaintiffs right of entry has not occurred.
Since the mortgage at issue is an instrument promulgated by the lender to the borrower and since the operative and binding terms thereof are not negotiable by the borrower, such an instrument is considered to be a contract of adhesion which is typically construed against the drafter thereof (Belt Painting Corp. v TIG Ins. Co., 100 NY2d 377 [2003]). Under the circumstances presented to this court, it is appropriate and fair that the terms of the instrument be construed in favor of defendant.
In the matter before the court, it is apparent that plaintiff has perpetrated a trespass against the real property of defendant, which is actionable and subjects plaintiff to liability for damages. Distilled to its very essence, trespass is characterized by one’s intentional entry, with neither permission nor legal justification, upon the real property of another (Woodhull v Town of Riverhead, 46 AD3d 802 [2d Dept 2007]). The injury arising therefrom afflicts the owner’s right of exclusive possession of the property (Steinfeld v Morris, 258 App Div 228 [1st Dept 1939]; Kaplan v Incorporated Vil. of Lynbrook, 12 AD3d 410 [2d Dept 2004]). The elements of a claim for trespass are intent coupled with the entry upon the land that is in the possession of another. In order for trespass to lie, general intent is *690 legally insufficient. Instead, there must be a specific intent, either to enter the land or to engage in some act whereby it is substantially certain that such entry onto the land will result therefrom (Phillips v Sun Oil Co., 307 NY 328 [1954]). The intent need not be illegal or unlawful (MacDonald v Parama, Inc., 15 AD2d 797 [2d Dept 1962]), but even one who enters the land upon the erroneous belief that he has the right to enter thereon will be held liable in trespass (Burger v Singh, 28 AD3d 695 [2d Dept 2006]). Trespass will lie against a party if entry upon the land was perpetrated by a third party, such as an independent contractor or other party, at the direction of the party to be charged (Gracey v Van Camp, 299 AD2d 837 [4th Dept 2002] ). It follows then, both logically and legally, that the injured party must have been in possession, whether actual or constructive, at the time that the alleged wrongful entry occurred (Cirillo v Wyker, 51 AD2d 758 [2d Dept 1976]). In the matter that is presently sub judice, it is clear that a trespass has occurred on at least two separate occasions. It is apparent to the court that this trespass was perpetrated against the property of defendant and was done at the special instance and request and upon the affirmative directive of plaintiff. Since the court finds that liability for trespass lies against plaintiff and in favor of defendant, the court must now move forward to consider and to determine the damages, if any, that should properly be awarded to defendant.
Actual damages may be recovered against the trespassertortfeasor though they are not a mandatory component of the claim (Amadeo v Town of Marlborough, 307 AD2d 507 [3d Dept 2003] ). The rule applicable herein is that where the invasion is de minimis or the actual amount of damages is not capable of calculation nor is it readily quantifiable, then an award of nominal damages will be appropriate under the circumstances (Town of Guilderland v Swanson, 29 AD2d 717 [3d Dept 1968], affd 24 NY2d 872 [1969]). Indeed, the damages that are recoverable by the injured party include those resulting from each and every consequence of the trespass, inclusive of both damage to property and injury to the person but only to the extent that such damages arose as a direct result of the wrongful intrusion by the trespasser-tortfeasor (Vandenburgh v Truax, 4 Denio 464 [Sup Ct Judicature 1847]).
Damages for injury to real property are typically calculated and awarded as the lesser amount of the decline in fair market value versus the cost of restoring the property to its state before *691 the trespass, in other words, the injured party is entitled to recover the amount by which the property has been devalued (Hartshorn v Chaddock, 135 NY 116 [1892]; Slavin v State of New York, 152 NY 45 [1897]). In this matter, there is no evidence that the value of the property has been diminished or otherwise adversely affected by the trespass, hence this method of calculation of damages is inapplicable.
In instances where the conduct complained of is willful, wanton or egregious, the court is vested with the power to award exemplary damages. Exemplary damages may lie in a situation where it is necessary not only to effectuate punishment but also to deter the offending party from engaging in such conduct in the future. Such an award may also be made to address, as enunciated by the Court of Appeals in Home Ins. Co. v American Home Prods. Corp. (75 NY2d 196 [1990]), “gross misbehavior for the good of the public ... on the ground of public policy.” Indeed, exemplary damages are intended to have a deterrent effect upon conduct which is unconscionable, egregious, deliberate and inequitable (I.H.P. Corp. v 210 Cent. Park S. Corp., 12 NY2d 329 [1963]).
Since an action to foreclose a mortgage is a suit in equity (Jamaica Sav. Bank v M. S. Inv. Co., 274 NY 215 [1937]), all of the rules of equity are fully applicable to the proceeding, including those regarding punitive or exemplary damages (I.H.P. Corp. v 210 Cent. Park S. Corp., supra). Indeed this court is persuaded that Judge Benjamin Cardozo was most assuredly correct in stating that “[t]he whole body of principles, whether of law or of equity, bearing on the case, becomes the reservoir to be drawn upon by the court in enlightening its judgment” (Susquehannah S.S. Co. v Andersen & Co., 239 NY 285, 294 [1925]). In a suit in equity, the court is empowered with jurisdiction to do that which ought to be done. While the court notes that the formal distinctions between an action at law and a suit in equity have long since been abolished in New York (see CPLR 103; David Dudley Field Code of 1848 §§ 2, 3, 4, 69), the Supreme Court is nevertheless vested with equity jurisdiction and the distinct rules governing equity are still very much applicable (Carroll v Bullock, 207 NY 567 [1913]). Therefore, in a matter where the conduct of the party to be charged is either willful, wanton or reckless, the court may invoke the principles of equity so as to make an award of exemplary damages.
Here, the court is constrained to find that the conduct of plaintiff in this matter was both willful and wanton, as evi *692 denced by not one but two unauthorized entries into defendant’s dwelling, occurring in complete derogation of defendant’s right of possession. This conduct becomes even more glaring when consideration is given to the fact that defendant affirmatively notified plaintiff that he had secured the property and that it was not abandoned and still contained his personal property. Even so, plaintiff maintains that it has entered the property under a color of right, which turns out to be illusory under the circumstances. In spite of these declarations, plaintiff willfully took it upon itself to enter the property on more than one occasion, doing so unreasonably and without notice, in direct contravention of the terms of its mortgage promulgated to defendant by its assignor. This is even more distressing when it is considered that plaintiff breaches its obligations to defendant under the mortgage, running roughshod over defendant’s rights with a specious claim that it is acting to protect its rights and the property. In short, the conduct of plaintiff was nothing short of oppressive and would best be described as heavy-handed and egregious, to say the very least. Certainly, the trespass was willful and calculated and was not accidental in any way and the court finds that plaintiff did not act in good faith. Under these circumstances, an award of both actual and exemplary damages is necessary and appropriate in order to properly compensate defendant for the losses he has sustained by way of plaintiffs shockingly wrongful conduct as well as to serve as an appropriate deterrent to any future outrageous, improper and unlawful deeds.
The court finds the appropriate measure of damages for the trespass to defendant’s possessory interest in the property to be in the amount of $200. The court further finds that defendant is entitled to recover $4,892 representing the value of the personalty lost as a direct result of plaintiff’s actions in trespass. Finally, the court finds that defendant is entitled to recover exemplary damages from plaintiff in the amount of $150,000.
For all of the foregoing reasons, it is, therefore ordered, adjudged and decreed that the defendant Steven E. Tyson, residing at 3 Danville Court, Greenlawn, New York 11740, recover judgment against the plaintiff Wells Fargo Bank N.A., with an office located at 3476 Stateview Boulevard, Fort Mill, South Carolina 29715, the sum of $200 for damages resulting from trespass, together with the sum of $4,892 for actual loss, *693 together with the sum of $150,000 for exemplary damages, for a total recovery of $155,092 and that the defendant have execution therefor.