OPINION OF THE COURT
Robert J. Miller, J.
Defendants the City of New York; the New York City Department of Buildings (DOB); Robert Limandri, as Commissioner of the DOB; Bryan Winter, as Brooklyn Deputy Borough Commissioner of DOB; the New York City Landmarks Preservation Commission (LPC); Robert B. Tierney, as Chair of LPC; the Department of Housing Preservation and Development of the City of New York (HPD); and Rafael E. Cestero, as Commissioner of HPD (collectively, the City Defendants) move for an order dismissing the petition/complaint pursuant to CPLR 3211 (a) (7), for failure to state a cause of action,[1] and CPLR 3211 (a) (2), for lack of ripeness/jurisdiction.
Facts and Procedural History
(a)
The instant action involves what was once a five-story building located at 100 Clark Street in Brooklyn, New York (the Building),[2] that plaintiff Idlewild 94-100 Clark, LLC (Idlewild) purchased on March 6, 2006.[3] Upon purchasing the Building, Idlewild retained Parette Somjen Architects LLC (PSA) to inspect the Building and prepare plans, subject to DOB’s and LPC’s approval, to demolish the existing 18 residential apartments in the Building, construct six new residential units, and replace the interior partitions, floors, subfloors, ceilings, roof, and operating systems therein. PSA purportedly inspected the Building, found no dangerous conditions, and prepared plans which were submitted to DOB and LPC and approved. According to Idlewild, neither DOB nor LPC ever advised plaintiffs that the Building was dangerous or unsafe.
*1010 On or about February 10, 2008, DOB first received a complaint that the top floor of the Building was bowing, that the fire escape was “out of plumb” and pulling away from the facade, and that the bricks and scaffolding were leaning. After inspection, DOB determined that no violations were warranted (see DOB complaint report, annexed as exhibit A to plaintiffs’ opposition papers). HPD also inspected the Building in response to the initial complaint on February 19, 2008 and did not find any dangerous or unsafe conditions.
Late in the evening on or about Friday, May 23, 2008, DOB allegedly received a new complaint that the door on the right side of the Building, the third floor, and the roof were bowing. DOB then sent an emergency response team (ERT) to inspect the Building on Saturday, May 24, 2008. Asaro Hodges, also known as Leonard Asaro, a member of the ERT, inspected the Building and summoned the ERT’s weekend-duty engineer, Constandino Sirakis, to the site for further inspection. Together, they found the Building to be in imminent danger of collapse due to the bulging wall and out of plumb fire escape and collectively recommended immediate demolition to a safe level. They also summoned Winter, as Brooklyn Deputy Borough Commissioner of DOB, to independently examine the Building’s conditions. Winter concurred with Asaro and Sirakis’ determination and recommendation.
That same day, DOB issued a verbal declaration of immediate emergency, which was later reduced to writing and signed on May 27, 2008, the next succeeding business day after the Memorial Day holiday. Additionally, DOB posted a peremptory vacate order (the vacate order) directed to all occupants on the front door of the Building, which indicated that it would be mailed to the owner on May 28, 2008.[4] On May 24, 2008, DOB also posted a notice of violation (NOV), which was signed by Asaro, whose affidavit/affirmation of service states that the NOV was served upon Idlewild by alternative method charter service.[5]
*1011 DOB’s written emergency declaration form (the EDF), confirming an immediate emergency and recommending that the top two floors of the Building be demolished, was dated May 24, 2008. However, the EDF was not signed until Tuesday, May 27, 2008, and date-stamped May 28, 2008.®
Subsequently, during the evening on Saturday, May 24, 2008 of the Memorial Day holiday weekend, A. Russo Wrecking Company, HPD’s approved contractor, began partially demolishing the Building in response to the declaration of immediate emergency. It continued and completed demolition of the top two floors of the Building on the following day. On-site demolition status meetings were held during the mornings of Sunday, May 25, 2008 and Monday, May 26, 2008 (which was the Monday of the Memorial Day holiday weekend). No representatives of Idlewild were present at either meeting, although the City Defendants allegedly made numerous attempts to contact Penson, the president of Idlewild.[6]
[7]
In the morning on Tuesday, May 27, 2008, another site meeting at the Building was held with all parties, including representatives of the owner and their initial engineer. They observed crumbling bricks due to deteriorating mortar at the joists indicating the compromised structural stability of the Building. At that time, DOB engineer Deodat Ramsarran and Winter determined that the entire building needed to be demolished. DOB then issued an amended emergency declaration form (the amended EDF), which was signed May 28, 2008 and date-stamped May 29, 2008, with a recommendation to demolish the Building to grade, remove all debris, and install a construction fence.[8] Pursuant to Operations Policy and Procedure Notice (OPPN) 16/93,[9] DOB also sent a notice to plaintiff, dated May *1012 29, 2008, stating, inter alia, that the Building had been declared unsafe and must be repaired or demolished immediately.[10]
As a result of the allegedly poor and improper work performed in the demolition of the Building, DOB issued six total NOVs against Idlewild. These NOVs were issued for, inter alia, problems relating to the sidewalk shed, protection for sidewalks and walkways during demolition operations, failure to perform demolition operations in a safe and proper manner, and failure to maintain exterior building walls.
On Thursday, May 29, 2008, Ramsarran, on behalf of DOB, and Sheldon Pulaski, a new engineer for the owner, inspected the premises together. Although Pulaski found that the Building, its floors and support walls were structurally sound, Ramsarran disagreed and opined that the remaining undemolished portion of the Building needed to be braced and shored.
(b)
On or about May 28, 2008, Idlewild commenced an article 78 proceeding (Idlewild 94-100 Clark, LLC v DOB et al., Sup Ct, Kings County, index No. 15489/08 [the prior article 78 proceeding]), by order to show cause and verified petition seeking, inter alia, an order preventing DOB from further demolishing the Building and a judgment declaring that the determination of DOB to commence demolition of the subject building was arbitrary and capricious. The order to show cause, signed by the Honorable Betsy Barros on May 28, 2008, enjoined respondents in the prior article 78 proceeding (defendants DOB, Limandri, LPC, and Tierney herein) “from demolishing or in any way altering the building, the configuration of the building or any portion thereof, or performing any work, improvements and/or repairs at the [subject] building.” That court also ordered DOB and the owner of the Building to allow access to the Building to conduct an inspection regarding the existing conditions of the premises prior to the preliminary injunction hearing on the motion.
On May 30, 2008, the parties in the prior article 78 proceeding entered into a stipulation (the stipulation), so-ordered by Justice Barros, wherein DOB permitted Idlewild to take over *1013 work at the subject building, provided that the process of shoring and stabilization began immediately. The stipulation also provided that, in the event that an emergency arises that is perilous to the life or safety of the public, nothing prevented DOB from acting pursuant to its authority under the Administrative Code, the Rules of the City of New York, or the New York City Charter. In a supplemental order dated May 30, 2009, Justice Barros directed DOB to use its best efforts to secure the Building and protect the public before further actions were taken in the event of an emergency. Idlewild commenced the shoring and stabilization process on May 31, 2008.
On or about November 18, 2008, Idlewild moved by order to show cause in the prior article 78 proceeding, seeking, inter alia, (1) leave to amend the petition to include various additional causes of action; (2) joinder of HPD as a respondent; (3) an order setting the matter for trial; (4) an order permitting discovery; and (5) injunctive relief, including a stay of all administrative proceedings regarding any violations issued to the subject property. The Honorable James G. Starkey signed the order to show cause, directing that (1) all stays and temporary restraining orders and/or preliminary injunctions remain in effect; (2) DOB and HPD be enjoined from demolishing or altering the subject building or removing any property or possessions located at the building; (3) a determination on the prior article 78 proceeding be stayed; and (4) that the enforcement and/or adjudication of any agency violations without prior court approval relating to these matters be stayed.[11] On April 1, 2009, Justice Starkey decided that the preliminary injunction and temporary restraining order would remain in place through the commencement of the instant plenary action by plaintiffs.
(c)
Plaintiffs commenced the instant hybrid article 78 proceeding and action on May 22, 2009, raising 41 causes of action. Among other things, they (1) challenge the declaration of immediate emergency, dated May 24, 2008, and all DOB violations issued to plaintiffs, and returnable before the Environmental Control Board (ECB), as arbitrary and capricious; (2) seek permanent injunctive relief restraining further demolition of the subject building and enforcement of agency violations, liens and ac *1014 tions; and (3) seek a declaratory judgment that the City Defendants violated rules and procedures in issuing the declaration of immediate emergency and vacate order, and that plaintiffs can rebuild the subject building to the dimensions permitted prior to the building’s demolition.[12]
The Parties’ Contentions
The City Defendants claim that DOB’s determination to declare an immediate emergency and issue the vacate order on the Building was reasonable, rational, and in compliance with the law. They assert that plaintiffs’ claims seeking declaratory relief (and damages) with respect to the adjudication of HPD liens, NOVs issued by DOB, and LPC violations are premature and not ripe for review. They also contest plaintiffs’ request for a trial pursuant to CPLR 7804 (h), oppose plaintiffs’ request for an order allowing them to rebuild the Building to its original specifications, and insist that plaintiffs’ request for a preliminary injunction is moot. Furthermore, they argue that plaintiffs’ due process claims fail as a matter of law and that the trespass claim does not state a cause of action. Finally, they contend that plaintiffs’ negligence and tort claims must be dismissed because the City Defendants are immune from liability and that the request for punitive damages fails because punitive damages are not available against a municipality.
In opposition, plaintiffs argue that DOB’s actions were arbitrary and capricious because, inter alia, the New York City Charter does not empower DOB to unilaterally demolish buildings without notice to the owner; DOB failed to follow procedures set forth in OPPN 10/93 and 16/93; and a hearing pursuant to CPLR 7804 (h) is required to determine outstanding issues. They also maintain that all causes of action delineated in the complaint against HPD, ECB, and LPC are ripe for adjudication. According to plaintiffs, they were deprived of procedural and substantive due process. Finally, they assert that the complaint successfully states causes of action for trespass and indemnification and that they are entitled to punitive damages.
Discussion
“On a motion to dismiss pursuant to CPLR 3211, *1015 the . . . complaint is to be afforded a liberal construction. The facts as alleged in the . . . complaint are accepted as true, the plaintiff is accorded the benefit of every possible favorable inference, and the court’s function is to determine only whether the facts as alleged fit within any cognizable legal theory” (Goldfarb v Schwartz, 26 AD3d 462, 463 [2006]; see also 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002]; Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
Moreover, “[t]he criterion is whether the plaintiff has a cause of action and not whether he [or she] may ultimately be successful on the merits” (One Acre v Town of Hempstead, 215 AD2d 359, 359 [1995]). However, “where evidentiary material is submitted, the court is required to determine whether the proponent of the pleading has a cause of action, not whether he or she has stated one” (Town of Riverhead v County of Suffolk, 39 AD3d 537, 539 [2007]). The dismissal of a complaint pursuant to CPLR 3211 (a) (7), therefore, “will be warranted only in those situations in which it is conclusively established that there is no cause of action” (Town of N. Hempstead v Sea Crest Constr. Corp., 119 AD2d 744, 746 [1986]).
Article 78 Claims
It is well settled that a court’s function in an article 78 proceeding is “to scrutinize the record and determine whether the decision of the administrative agency [in question] is supported by substantial evidence and not arbitrary and capricious” (Matter of Marsh v Hanley, 50 AD2d 687, 687 [1975]; see also Arbuiso v New York City Dept. of Bldgs., 64 AD3d 520, 522 [2009], citing Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). If the court finds that the agency determination has a rational basis and is supported by substantial evidence, such determination must be sustained (Matter of Dawson v Zoning Bd. of Appeals of Town of Southold, 12 AD3d 444 [2004]). Where the decision under review is not arbitrary and capricious, the reviewing court in an article 78 proceeding is prohibited from substituting its own judgment for that of the agency (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222 [1974]; Morley v Arricale, 66 *1016 NY2d 665 [1985]). It is also axiomatic that “[t]he construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld” (Matter of Howard v Wyman, 28 NY2d 434, 435 [1971]; see also Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545 [1997]; Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., 104 AD2d 223 [1984]; Matter of Tommy & Tina, Inc. v Department of Consumer Affairs of City of N.Y., 95 AD2d 724 [1983]). Although administrative agencies are to be afforded great deference with regard to such statutes and regulations, a court may, nonetheless, find that an agency determination is arbitrary and capricious where the agency “neither adhered to its own prior precedent nor indicated its reasons for reaching different results on essentially the same facts” (Matter of 2084-2086 BPE Assoc. v State of N.Y. Div. of Hous. & Community Renewal, 15 AD3d 288, 288 [2005]; see also Matter of 721 Ninth Ave., LLC v New York State Div. of Hous. & Community Renewal, 8 AD3d 41, 43 [2004] [administrative agency’s determination that building was subject to the Rent Stabilization Code found to be arbitrary and capricious where the agency “failed to follow a prior determination in a proceeding with remarkably similar facts or explain its reasons for reaching a contrary result”]; Matter of Civic Assn. of Setaukets v Trotta, 8 AD3d 482, 483 [2004] [finding zoning board determination arbitrary and capricious where the board granted an application for a zoning variance which was identical to an application it had denied a year earlier]; Matter of Waylonis v Baum, 281 AD2d 636, 638 [2001]; Matter of 72A Realty Assoc. v New York City Envtl. Control Bd., 275 AD2d 284, 287 [2000]; Matter of 140 W. 57th St. Corp. v State Div. of Hous. & Community Renewal, Off. of Rent Admin., 130 AD2d 237 [1987]; Matter of Stop Polluting Orleans County v Crotty, 3 Misc 3d 1111[A], 2004 NY Slip Op 50568[U] [2004]).
DOB has the authority to determine and declare buildings to be in a state of immediate emergency under, inter alia, New York City Charter § 643 and Administrative Code of the City of NY §§ 26-235, 26-243, and 26-127.[13] During DOB’s May 24, 2008 inspection of the Building, it was entitled to rely on the expertise and experience of the ERT and its weekend-duty engineer, Sirakis, who recommended that an immediate emergency be issued on account of the bulging wall and out of plumb fire escape, and *1017 that the building be demolished to a safe level.[14] Additionally, Winter attests that, upon conferral with Sirakis at the site inspection, he agreed that the Building must be reduced to a safe level by demolishing the top two floors. The record also reflects that DOB followed necessary notice procedures for emergency demolition in compliance with the Administrative Code and OPPN 16/93 and that DOB promptly consulted with LPC representatives with regard to the Building’s landmarked status.
In opposition, plaintiffs present only evidence in the form of testimony by their engineer, Pulaski, whose statements that the Building was structurally sound were based only upon inspection on May 29, 2008, after the top two floors had already been demolished. Although his professional opinion differed from those of Sirakis and Ramsarran, another engineer who inspected the Building again on behalf of DOB on May 27, 2008, this discrepancy alone does not invalidate DOB’s administrative determination. Absent a clear showing by plaintiffs that the determination of the DOB was arbitrary and capricious or in any way irrational, such determination should not be disturbed (East 13th St. Homesteaders’ Coalition v Wright, 217 AD2d 31, 39 [1995]). The evidence thus provides a rational basis for DOB’s determination that the Building was in immediate danger of collapse. Accordingly, the branch of the City Defendants’ motion seeking to dismiss plaintiffs article 78 claims should be granted.
In light of the conclusions of the court, as discussed above, no trial pursuant to CPLR 7804 (h) is necessary. Contrary to plaintiffs’ suggestion, issues such as whether the Building was actually in imminent danger of collapse and whether demolition was the only appropriate remedy are discretionary determinations of DOB to which the court must defer. The court concludes that Pulaski’s affidavit does not raise a triable issue of fact requiring a trial. There is no need for an additional fact-finding hearing here, for judicial review of DOB’s determination is limited to assuring that, based on the information before it, DOB’s decision was not arbitrary, capricious or affected by an error of law (see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416 [1986]).
*1018 Due Process Claims
Plaintiffs also raise due process issues regarding the constitutional sufficiency of the notice that was used to apprise them of the agency’s determination regarding the Building. Specifically, plaintiffs argue that the City Defendants failed to comply with OPPN 16/93 because DOB did not issue the EDF or provide Idlewild with notice until several days after the immediate emergency had been declared and the demolition of the Building had already begun.[15] They also aver that they did not receive notice of the declaration of immediate emergency because the EDF and amended EDF were sent to Idlewild at the incorrect address.
However, as the City Defendants contend, if there are exigent circumstances which require immediate demolition of a building to protect the public from imminent danger, a municipality may demolish it without providing the owner with notice and an opportunity to be heard (see Rapps v City of New York, 54 AD3d 923 [2008]; Calamusa v Town of Brookhaven, 272 AD2d 426, 427 [2000]; Starik v City of New York, 68 AD2d 936 [1979]).
The demolition of a building for the purpose of dealing with an emergency, without a prior hearing, does not give rise to a due process claim as long as there is a postdeprivation remedy (see Rohde v City of New York, 2000 WL 1372835, *3-4, 2000 US Dist LEXIS 13867, *10-12 [SD NY 2000], citing Catanzaro v Weiden, 188 F3d 56, 62 [2d Cir 1999]; see also Kshel Realty Corp. v City of New York, 293 Fed Appx 13, 15 [2008] [“ ‘where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical,’ an official’s decision to invoke an emergency procedure and proceed without predeprivation process does not violate due process”]; Matter of Department of Hous. Presero. & Dev. of City of N.Y. v Cohen, 128 Misc 2d 351, 353-354 [1985]). The key inquiry is whether there was “competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impracti *1019 cal” (DePietro v City of New York, 2010 WL 449096, *6, 2010 US Dist LEXIS 8598, *19 [2010]).
“[Necessity of quick action by .the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State’s action at some time after the initial taking, can satisfy the requirements of procedural due process” (Catanzaro, 188 F3d at 61).
Thus, due process is offended only “when an emergency procedure is invoked in an. abusive and arbitrary manner” (Kshel, 293 Fed Appx 13, 15, quoting Catanzaro, 188 F3d at 62).
Here, given the exigent circumstances presented by the Building’s imminent danger of collapse, which necessitated prompt action by DOB, plaintiffs were not deprived of due process merely because they were not afforded any predeprivation notice or hearing.[16] Rather, plaintiffs’ opportunity to contest the propriety of the agency determination and seek money damages through a common-law state court action, as here, constituted meaningful postdeprivation process. The availability of state court actions as fair forums where plaintiffs can protect their rights has been upheld as providing adequate postdeprivation remedies (see e.g. Jackson v Burke, 256 F3d 93 [2d Cir 2001]; TZ Manor, LLC v Daines, 2009 WL 2242436, *10, 2009 US Dist LEXIS 65168, *30 [SD NY 2009]; Rohde, 2000 WL 1372835, *4, 2000 US Dist LEXIS 13867, *12 [2000]). In the absence of any allegation by plaintiffs that they were deprived of due process because postdeprivation remedies were either unavailable or insufficient, plaintiffs’ due process claim must be dismissed for failure to state a claim.[17]
*1020 Takings Claim
Plaintiffs assert in their twentieth cause of action that the partial demolition of the Building constituted an uncompensated “taking” in violation of the United States Constitution and the Just Compensation Clause. However, the “municipal demolition of an imminently dangerous structure in order to protect the public is an exercise of the police power and does not constitute a ‘taking’ ” (Wantanabe Realty Corp. v City of New York, 315 F Supp 2d 375, 401 [SD NY 2003], citing Rochester Poster Adv. Co. v City of Rochester, 38 AD2d 679 [1971]). The court must defer to DOB’s discretion in determining that the Building was in imminent danger of collapse and required emergency demolition (see generally Matter of Concetta T. Cerame Irrevocable Family Trust v Town of Perinton Zoning Bd. of Appeals, 6 AD3d 1091, 1091 [2004]), as supported by the record. In light of the agency’s determination, we cannot find that plaintiffs stated a takings claim with respect to DOB’s entry and demolition of the Building. Accordingly, the part of the City Defendants’ motion seeking to dismiss plaintiffs’ takings claim should be granted.
Ripeness of Plaintiffs’ Claims against HPD, ECB, and LPC
The City Defendants argue that plaintiffs’ causes of action numbered 16 (seeking recovery for potential liability to LPC for demolition of a landmarked building), 26 (seeking recovery for the costs of defending DOB violations issued for the Building’s conditions in an ECB hearing), and 27 (seeking damages for present and future liens, fines, and penalties imposed by the HPD against the Building) should be dismissed for lack of ripeness under CPLR 3211 (a) (2) because plaintiffs have not yet exhausted any of their administrative remedies and review of any actions taken by HPD, ECB, and LPC are premature at this time. They contend that plaintiffs mischaracterize their claims as claims for monetary damages and aver that an article 78 proceeding is the only appropriate vehicle for seeking judicial review of agency actions.
The court agrees that plaintiffs in fact seek judicial review of administrative actions and notes that plaintiffs herein have not yet sought relief from the relevant administrative tribunals. Without first availing themselves of all administrative remedies, plaintiffs preclude themselves from article 78 relief (see Matter *1021 of KLCR Land Corp. v Public Serv. Commn. of State of N.Y., 20 AD3d 849, 851 [2005], citing Young Men’s Christian Assn. v Rochester Pure Waters Dist., 37 NY2d 371, 375 [1975]). With regard to the HPD liens for the partial demolition of the Building, plaintiffs have not submitted a notice, as required under Administrative Code § 27-2129, and may not contest the HPD’s emergency repair charges in a judicial or administrative proceeding.[18] Similarly, due to a court order staying the adjudication of NOVs pending before ECB regarding the Building, only one of the six NOVs has been heard before an ECB administrative law judge, and plaintiffs have yet to file any appeals challenging the propriety of DOB’s issuance of NOVs. Lastly, plaintiffs’ unspecified claims against LPC fail because LPC has yet to pursue any claims against plaintiffs based on the Building and its demolition. Thus, it cannot be said that HPD, ECB, and LPC have taken “a definitive position that inflicts an actual, concrete injury” (Matter of Gordon v Rush, 100 NY2d 236, 242 [2003]; Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 519 [1986]) or rendered a final determination from which plaintiffs may appeal in a court of law. Accordingly, plaintiffs’ claims are not ripe for judicial review and must be dismissed as premature.[19]
Municipal Immunity
The City Defendants argue that plaintiffs are not entitled to any monetary damages because the instant lawsuit involves discretionary action by a city agency and the City Defendants are thus immune from liability. In contrast, plaintiffs claim that municipal immunity does not apply because DOB’s determination that the Building was in immediate danger of collapse and required emergency demolition was ministerial and DOB was required to strictly follow emergency declaration procedures set forth in Administrative Code § 26-236 and OPPN 16/93.
A distinction exists between ministerial (nondiscretionary) acts from which liability arises if performed wrongfully, and *1022 judicial or discretionary acts, from which public officers and municipalities are immune to liability even if the act is wrongful or the judgment was poor in retrospect (see Mon v City of New York, 78 NY2d 309, 313 [1991]; Haddock v City of New York, 75 NY2d 478, 484 [1990]; Tango v Tulevech, 61 NY2d 34, 40 [1983]; see also Kovit v Estate of Hallums, 4 NY3d 499, 506 [2005]). Where the law requires an entity or officer to do a specified act, in a specified way, upon a conceded state of facts, without regard to its or his or her own judgment as to the propriety of the act, the duty is ministerial in character. Discretionary acts, on the other hand, involve the exercise of professional judgment and reason in the adoption of a means to an end (see generally Tango, 61 NY2d at 40-41).
Here, the court finds that DOS’s determination that an immediate emergency existed, warranting demolition of the Building, was a discretionary act entitling the City Defendants to full immunity from liability. Although DOB follows a prescribed set of procedures in executing the act, the determination of emergency itself relies on the judgment of professionals such as Sirakis and other engineers, and is not improper merely because others would have reached a different conclusion as to the structural soundness of the Building (see Mitrofanis v Smith, 130 Misc 2d 518, 519 [1985] [the determination of whether a structure is dangerous or unsafe lies within the agency’s discretionary authority]). Thus, the City Defendants are entitled to immunity from liability and are not liable for damages.
Trespass Claim
Plaintiffs’ state trespass claim alleges that the City Defendants’ purported entry and demolition of the Building was unauthorized in light of the improper determination that the Building was in immediate danger of collapse and/or possibility that the alleged condition could have been remedied without demolition. In order to state a claim for the tort of trespass, plaintiffs must allege the elements of “intent coupled with the entry upon the land that is in the possession of another” (Wells Fargo v Tyson, 27 Misc 3d 684, 689 [2010]). The alleged trespasser must intend the act which amounts to or produces the unlawful invasion (Courtney Assoc. v 50 W. 15th LLC, 24 Misc 3d 1233[A], 2009 NY Slip Op 51739[U], *4 [2009]), but even one who enters the land upon the erroneous belief that he has the right to enter thereon will be held liable in trespass (Burger v Singh, 28 AD3d 695 [2006]). Given the court’s conclu *1023 sion that the City Defendants’ demolition of the Building was not arbitrary and capricious, as discussed above, and therefore not unlawful, plaintiffs’ claim for trespass must be dismissed for failure to state a claim.
Indemnification Claim
In claims numbered 21-25 and 36-37, plaintiffs seek indemnification from the City Defendants for claims raised by tenants of the Building and for NOVs issued by DOB stemming from the allegedly improper demolition of the Building. Although Idlewild and Penson concede that the City Defendants have no contractual liability to indemnify plaintiffs, they argue that plaintiffs are entitled to recover under common-law indemnification for liabilities that arose solely due to the City Defendants’ wrongdoing. In order to state a claim for common-law indemnification, plaintiffs must allege that their “injury was due solely to the appellant’s negligent performance or nonperformance of an act solely within its province” (Corley v Country Squire Apts., Inc., 32 AD3d 978, 979 [2006], citing Murphy v M.B. Real Estate Dev. Corp., 280 AD2d 457 [2001]). Here, however, plaintiffs have not made any allegations that the City Defendants’ actions were negligent or that the City Defendants had any duty toward plaintiffs. Accordingly, this branch of the City Defendants’ motion to dismiss is granted.
Punitive Damages Claim
The City Defendants assert that plaintiffs’ last claim seeking $8 million in punitive damages is unavailing because plaintiffs failed to state a cause of action in tort against the City Defendants. Assuming arguendo that some of plaintiffs’ claims survived dismissal, however, punitive damages are not recoverable against municipalities (see Krohn v New York City Police Dept., 2 NY3d 329, 335 [2004], citing Sharapata v Town oflslip, 82 AD2d 350 [1981]; Hoydal v City of New York, 154 AD2d 345, 345 [1989]). Thus, where the named defendants are all governmental entities, as here, plaintiffs’ claim for punitive damages must fail. Although plaintiffs aver that public officials are still subject to punitive damages, the City Defendants correctly indicate that Winter, as Brooklyn Deputy Borough Commissioner of DOB, Tierney, as Chair/Commissioner of LPC, and Cestero, as Commissioner of HPD, have been named in their official capacities, and plaintiffs make no allegations against those public officials for any improper conduct outside of their *1024 governmental duties. Accordingly, this branch of the City Defendants’ motion to dismiss is granted.
Remaining Claims
The court declines to preliminarily enjoin the City Defendants from further demolishing the Building. In correlation with the City Defendants’ mootness arguments, the court finds that plaintiffs have not demonstrated any “immediate and irreparable harm” — one of the key elements a plaintiff must establish for the grant of a preliminary injunction — that would stem from a denial of their request for a preliminary injunction (see Ginsburg v Ock-A-Bock Community Assn., Inc., 34 AD3d 637 [2006]; Merrill Lynch Realty Assoc. v Burr, 140 AD2d 589, 592 [1988]). As the City Defendants have already ceased demolition of the Building and authorized plaintiffs to instead brace and shore the Building, there is no threat of such irreparable injury where plaintiffs have not alleged other threatening conduct by the City Defendants. Plaintiffs have therefore failed to make a showing entitling them to a preliminary injunction.
Similarly, the court declines to direct the City Defendants to allow plaintiffs to rebuild the Building to its predemolition specifications. The City Defendants correctly note that plaintiffs’ request should be properly characterized as relief in the nature of mandamus,[20] even though plaintiffs have not yet brought any demand to repair/rebuild the Building, nor was any refusal yet given by the agency. Mandamus does not lie to enforce the performance of a duty that is discretionary, as opposed to ministerial (see New York Civ. Liberties Union v State of New York, 4 NY3d 175, 184 [2005]). As discussed, decisions relating to the safety and emergency status of the Building are within DOB’s discretion. Moreover, mandamus is available only where there is a clear and absolute right to the relief sought and here, plaintiffs have not established such a right (see Matter of Council of City of N.Y. v Bloomberg, 6 NY3d 380, 388 [2006]; Matter of Brusco v Braun, 84 NY2d 674, 679 [1994]). Thus, this part of plaintiffs’ complaint must also be dismissed.
Conclusion
The City Defendants’ motion to dismiss the petition/complaint for failure to state a claim and for lack of ripeness and jurisdic *1025 tion is granted in its entirety. The court has considered the parties’ remaining contentions and finds them without merit.

. The portion of the City Defendants’ motion seeking to dismiss plaintiffs’ CPLR article 78 claims should have been made pursuant to CPLR 7804 (f).

. The subject building was designated as a landmark by LPC in 1965.

. Coplaintiff Edward Penson sues herein as the president of Idlewild.

. Plaintiffs protest that the vacate order was mailed four days sifter it was issued and four days after HPD and its contractor had already begun demolition on May 24, 2008.

. The alternative method charter service, pursuant to New York City Charter § 1404 (d) (2) (a) (ii) (affix and mail service), allows service by posting the notice of violation in a conspicuous place upon the premises where the violation occurred after a reasonable attempt to effectuate service was unsuccessful.

. Plaintiffs aver that the EDF was sent to the wrong address.

. ERT staff and staff from LPC and the Brooklyn Heights Association tried to call the owner of record (Penson) on May 24, 2008, but were unable to reach him.

. Plaintiffs aver that the amended EDF was also sent to the wrong address. Notwithstanding its issuance, however, the DOB did not execute the amended EDF because Justice Barros entered a temporary restraining order the following day, enjoining DOB from further altering the Building in any way.

. OPPN 16/93 provides, in part:
“When the Department of Buildings declares either an Immediate Emergency or an Emergency on an unsafe building, it is effectively sanctioning the city to demolish, repair, or take whatever action necessary to make the building safe. And either *1012 declaration allows the City to use an expedited bid process to retain a contractor to perform the required work.”
OPPN 16/93 also requires a letter of notice to be sent to the owner at the address listed in their database.

. Plaintiffs note that the notice, unlike the EDF and amended EDF, was sent to Idlewild at the correct address.

. Justice Starkey also denied Idlewild’s motion to amend the petition to include tort/damage claims and the motion of Charles Coleman, the rent-stabilized tenant of apartment 5 in the Building, to intervene in the prior article 78 proceeding.

. As of August 10, 2009, the City Defendants had not yet been served with a plenary action by the proposed tenant-intervenor in the prior article 78 proceeding challenging the May 2008 declaration of immediate emergency and vacate order.

. These provisions of the Administrative Code have since been repealed and superseded by new provisions effective July 1, 2008.

. The court notes that plaintiffs do not challenge the competence of the City Defendants’ engineers who found that the building was in a dangerous and unsafe condition and in imminent danger of collapse.

. They also contend that HPD engaged in the bidding process and/or retention of a contractor to demolish the building before the EDF had been issued. Additionally, plaintiffs unsuccessfully argue that DOB did not proceed with the correct legal actions required under Administrative Code § 26-236 prior to commencing demolition of the Building. However, as the City Defendants concede, DOB proceeded pursuant to their authority under DOB emergency procedures, rather than the nonemergency “unsafe building” procedures set forth in the Administrative Code.

. The court notes that the City Defendants nevertheless attempted to contact the owner of the building by telephone on May 24, 2008 and otherwise tried to provide plaintiffs with notice to the extent practicable prior to demolition. Plaintiffs also argue that DOB’s failure to issue the EDF immediately after the May 24, 2008 inspection, rather than delaying three days to issue the EDF, constituted a constitutional violation of due process. However, as the City Defendants explain, DOB issued a verbal declaration of immediate emergency to HPD, consistent with normal nonbusiness hours protocol, on Saturday, May 24, 2008 and followed up with the written copy of the formal order on May 27, 2008, after the Memorial Day holiday had passed. DOB supported such explanation with an affidavit from Eugene McArdle, the HPD liaison to the New York City Office of Emergency Management.

. Moreover, any claim that plaintiffs’ substantive due process rights were violated must also be dismissed because plaintiffs have not alleged that DOB’s determination and emergency demolition of the Building was so *1020 egregious or outrageous as to “shock the contemporary conscience” (see Pena v DePrisco, 432 F3d 98, 112 [2d Cir 2005] [citation and internal quotation marks omitted]; County of Sacramento v Lewis, 523 US 833 [1998]).

. Although HPD may be in the process of filing a lien against the Building for the emergency repairs, no such statements of account had yet been sent at the time the parties filed their motion and opposition papers.

. Because plaintiffs’ claims are not ripe for judicial review, they are also jurisdictionally defective and must be dismissed pursuant to CPLR 3211 (a) (2) (see Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO, 72 NY2d 307, 311 [1988]; 333 Cherry LLC v Northern Resorts, Inc., 66 AD3d 1176, 1178 n 3 [2009]).

. “Mandamus” is a command issuing from a court directed to some inferior court, tribunal, or board, or to some corporation or person, “to enforce a clear legal right where the public official has failed to perform a duty enjoined by law” (Matter of Schmitt v Skovira, 53 AD3d 918, 920 [2008]).